UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| PADDOCK INDUSTRIES, INC. ) | C.A. No. 0:15-cv-03292-JFA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER OF DEFAULT** |
| ) | **JUDGMENT** |
| PADDOCK POOL CONSTRUCTION ) | |
| COMPANY, CAMELBACK POOLS, LLC, ) | |
| and NEXGEN POOL AND SPAS, INC. ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendants Paddock Pool Construction Company ("Paddock Pool"), Camelback Pools, LLC ("Camelback Pools") and Nexgen Pool and Spas, Inc. ("NexGen"). *See* Dkt. No. 16. Hereinafter Paddock Pool, Camelback Pools and Nexgen are collectively referred to as the "Defendants." A damages hearing pursuant to Fed. R. Civ. P. 55 was held on November 6, 2015. *See* Dkt. No. 18. Upon consideration of the pleadings, Plaintiff's Motion for Default Judgment as well as the testimony and evidence submitted at the damages hearing, the Court finds that the Plaintiff is entitled to Default Judgment against Defendants and **GRANTS** Plaintiff's motion.

**RELEVANT BACKGROUND TO PLAINTIFF'S MOTION**

Plaintiff is in the business of providing the following services: construction, maintenance, repair, upfit and retrofit of swimming pools (the "Services"). *See* Dkt. No. 1, ¶ 8. Plaintiff has provided these Services under the trademark PADDOCK both directly and through its licensees. *Id.* at ¶ 8-9. Plaintiff has also used the trademark PADDOCK to market and sell swimming pools and swimming pool equipment and supplies sold together with the swimming pools, as well as components and supplies sold separately, including inlets, outlets, and piping associated therewith, filing spouts and hydrostatic relief valves, separation tanks, chemical feeders, chlorinators, water

cleaning equipment, strainers, skimmers and skimming weirs, overflow pipes and connections, pool perimeter cutters and piping associated therewith, cutter drains and deck drains, pumps and water-treating and water circulating and recirculating systems and piping associated therewith, sold as units for use in swimming pools (the "Goods"). *Id.* at ¶ 32. As such, Plaintiff has acquired valid and enforceable trademark rights to the mark PADDOCK for use in association with the Goods and Services (the "Mark"). *Id.* at ¶ 32-37 and 58.

Plaintiff's use of the Mark in association with the Goods and Services predates any use of the Mark or confusingly similar variations thereof made by any of the Defendants. *Id.* at ¶ 38. As a result of its prior use of the Mark, Plaintiff's rights to the Mark are superior to any right that any of the Defendants may claim in the Mark. *Id.* at ¶ 40 and 59.

On January 20, 2013, two of the Defendants, Paddock Pool and Camelback Pools, entered into an Amended Trademark License Agreement, under which Paddock Pool and Camelback Pools licensed the right to use the Mark in association with the Goods and Services. *Id.* at ¶ 9. *See also* Dkt. No. 1-1. Pursuant to the Amended Trademark License Agreement, Paddock Pool and Camelback Pools agreed that in exchange for the license, they would pay an annual royalty in an amount equal to the greater of .12% of their gross sales or $40,000. *Id.* at ¶ 12.

The Amended Trademark License Agreement provides that in the event of failure by either party to perform material obligations, either party may terminate the Trademark License Agreement upon six (6) months' notice, subject to right to cure such breach within sixty (60) days following receipt of written notice of failure to perform. *Id.* at ¶ 13. The Amended Trademark License Agreement defines the failure to timely pay royalties and/or assignment of the license without Plaintiff's consent as a material obligation set forth under the Agreement. *Id.* at ¶ 14.

On or about June 5, 2014, Plaintiff learned that Paddock Pool and Camelback had, without Plaintiff's consent, sold all of their assets, including the license to use Plaintiff's Mark, to Defendant NexGen. *Id.* at ¶ 16. Upon learning of Defendants' acts, Plaintiff provided Nexgen with written notice of Defendants' breach. *Id.* at ¶ 17. *See also* Dkt. No. 1-2. On or about June 24, 2015, Nexgen acknowledged receipt of Plaintiff's notice of breach, and stated an intention to cure such breach. *Id.* at ¶ 18. *See also* Dkt. No. 1-3. However, since at least as early as June 5, none of the Defendants have paid any royalty payments or provided any financial books or records. *Id.* at ¶ 19. Defendants have not cured any of the breaches of the Amended Trademark License Agreement identified in Plaintiff's June 5, 2014 and June 24, 2014 letters. *Id.* On April 10, 2015, Plaintiff provided notice of immediate termination of the Amended Trademark License Agreement based upon Defendants' failure to cure the breaches identified in Plaintiff's June 2014 letters. *Id.* at ¶ 20. *See also* Dkt. No. 1-4.

The Amended Trademark License Agreement provides that the agreement shall be construed and govern solely by the laws of South Carolina and that any controversy between the parties and arising out of the Agreement shall be exclusively subject to the jurisdiction of the courts within the State of South Carolina and the venue of York County, South Carolina. *See* Dkt. No. 1, ¶ 22. *See also* Dkt. No. 1-1, Art. XIII, ¶ 7-8. The Amended Trademark License Agreement further provides that upon ten days written notice, unpaid royalties shall accrue interest at a rate of eight percent per annum until paid. The Amended Trademark License Agreement also states that in any action brought by a party thereto, the prevailing party shall be entitled to recover its reasonable attorney's fees, cost and expenses of the suit. *Id. See also* Dkt. No. 1-1, Art. XIII, ¶ 12.

Despite the fact that Defendants have not paid the minimum royalties due under the Amended Trademark License Agreement, Nexgen continues to use Plaintiff's Mark to provide the

Goods and Services. *Id.* at ¶ 21. In doing so, Nexgen is generating significant negative attention in the press, thereby injuring Plaintiff's reputation and the goodwill surrounding Plaintiff's Mark. *Id.* This reputational damage and damage to the goodwill surrounding Plaintiff' Mark is causing Plaintiff' irreparable harm. Nexgen's continued use of Plaintiff's Mark is also preventing Plaintiff from obtaining a new licensee in the areas where Nexgen is using Plaintiffs' Mark.

On August 18, 2015, Plaintiff filed the instant action alleging breach of the Amended Trademark License Agreement, infringement of registered trademark in violation of 15 U.S.C. §1114, false designation of origin and unfair competition in violation of 15 U.S.C. §1125 and a violation of the S.C. Unfair Trade Practices Act. The Complaint alleged that the Court has federal question jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. §1331 and 1338(a) and diversity jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Plaintiff and Defendants are subject to personal jurisdiction in this District by way of the forum selection clause contained in the Amended Trademark License Agreement, and because a substantial part of the events giving rise to the dispute occurred in this District. The Summons and Complaint were served on each of the Defendants on or about August 27, 2015. *See* Dkt. Nos. 5-7. Defendants failed to timely file an Answer or otherwise plead, as reflected in the Rule 55 Affidavit of Default. *See* Dkt. No. 10. The Clerk of Court properly entered default as to each of the Defendants on September 24, 2015. *See* Dkt. No. 12. Plaintiff filed this Motion for Default Judgment on October 12, 2015 and a hearing on this matter was held on November 6, 2015. *See* Dkt. Nos. 16-18.

## LEGAL STANDARD

"A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled

to default judgment as a matter of right." *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(b)(6). Thus, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Anderson v. Found. for Advancement, Educ. & Emp 't of Am. Indians*, 187 F.3d 628, 1999 WL 598860 at*1  (4th Cir. 1999) (unpublished table opinion) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *accord Ryan*, 253 F.3d at 780.

"[W]hile a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Cement and Concrete Workers Dist. Council Welfare Fund*, 699 F.3d 230, 234 (2d. Cir. 2012). Plaintiff must provide an evidentiary basis for the damages sought. *Id*. "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." *Id*.; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009) (a court is not required to hold a hearing "as long as it ensures that there is a basis for the damages specified in the default judgment.") (internal quotations omitted).

## ANALYSIS

In a breach of contract case, the plaintiff is entitled to the amount of damages caused by the defendant's breach of the contract. *South Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 492, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) ("The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach"). Plaintiff seeks a damages award jointly and severally against all Defendants in the amount Sixty Two Thousand and Fifty Dollars and Seventeen Cents ($62,050.17), which consists of Fifty

Thousand Dollars ($50,000) of unpaid royalties due under the Amended Trademark License Agreement, Two Thousand Nine Hundred Fifty Six Dollars and Seventy One Cents ($2,956.71) in interest accrued on the unpaid royalties and Nine Thousand an Ninety Three Dollars and Forty Six Cents ($9,093.46) in attorneys' fees.  Because the Amended Trademark License Agreement provides for the payment of minimum royalties, interest accrued on unpaid royalties and payment of attorneys' fees, this Court finds the amount of damages sought by Defendant to be reasonable and supported by both the law and the Amended Trademark License Agreement.  Therefore, the Court awards Plaintiff damages in the amount of Sixty Two Thousand and Fifty Dollars and Seventeen Cents ($62,050.17).

Plaintiff also seeks an injunction restraining each of the Defendants, including their Officers, Directors, employees, agents and representatives from using the PADDOCK Mark or any confusingly similar variation thereof in association with the Goods or Services or any other related goods or services.  *See* Dkt. No. 1, ¶ 50-51, 62 and prayer for relief, ¶ i-j.

The Lanham Act provides for U.S. District Courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark in the Patent and Trademark Office…"  *See* 15 U.S.C. § 1116(a).  The Lanham Act further provides in pertinent part that:

> Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such an injunction… a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.  *Id*.

This Court deems an injunction reasonable to prevent future infringements of Plaintiff's trademark rights, especially in light of the willful nature of Defendants' continued use of Plaintiff's PADDOCK Mark and the irreparable harm such continued use is causing Plaintiff.  Therefore, the Court grants Plaintiff's request for an injunction.

## CONCLUSION

Plaintiff's Motion for Default Judgment against Defendants Paddock Pool Construction Company, Camelback Pools, LLC and Nexgen Pools and Spa, Inc. is hereby **GRANTED.**

**IT IS ORDERED THAT** the Clerk enter Final Judgment in favor of Plaintiff and jointly and severally against Defendants Paddock Pool Construction Company, Camelback Pools, LLC and Nexgen Pools and Spa, Inc., in the amount of **$62,050.17,** plus post-judgment interest at the 8% rate provided for in the Amended Trademark License Agreement until this judgment is paid.

**IT IS FURTHER ORDERED THAT** Defendants Paddock Pool Construction Company, Camelback Pools, LLC and Nexgen Pools and Spa, Inc., including their Directors, Officers, members, managers, servants, employees, and all persons acting on their behalf, are permanently enjoined and restrained from infringing upon Paddock Industries, Inc.'s trademark rights and from using the mark PADDOCK, or any confusingly similar variation thereof, to provide construction, maintenance, repair, upfit and retrofit services for swimming pools and/or swimming pool equipment and/or components.

**AND IT IS SO ORDERED.**

_Joseph F. Anderson, Jr._

Joseph F. Anderson, Jr.
United States District Court Judge

November 12, 2015
Columbia, South Carolina